# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 5, 2012

No. 11-30589
Summary Calendar

Lyle W. Cayce
Clerk

F. PAUL AUTERY,

Plaintiff - Appellant,

v.

GLAXOSMITHKLINE, L.L.C.,

Defendant - Appellee

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 6:05-CV-982

Before JONES, DENNIS, and HAYNES, Circuit Judges.

PER CURIAM:[*]

After six years of litigation in the district court, summary judgment was granted against F. Paul Autery ("Autery") in his wrongful death case against GlaxoSmithKline, L.L.C. ("GSK") for the tragic suicide death of his young son allegedly caused by the son's discontinuation of Paxil, an anti-depressant manufactured by GSK. We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-30589

The magistrate judge's order, which was adopted by the district court, chronicles well the long and somewhat cumbersome history of this case. We summarize very briefly.

A pediatrician prescribed Paxil to Autery's fifteen-year old son, Chris, who took it on and off for over a year without incident. Thereafter, Autery was arrested for aggravated assault of their six-year old neighbor. A few months later, Chris stopped taking Paxil. Seven days later, he committed suicide. Autery contends that the abrupt discontinuation of the Paxil caused Chris to commit suicide and that GSK failed to adequately warn of this danger.

Autery filed this case in mid-2005. For the next six years, both the magistrate judge and the district judge took an active role in overseeing this litigation. Of particular note is that the district court appointed counsel for Autery, who was acting pro se from prison after his conviction on the assault charges, to assist him in responding to GSK's motion for summary judgment. Throughout this lengthy period, discovery motions were filed and determined, and Autery received at least one continuance of the pre-trial order. Ultimately, the district court denied Autery's request for more discovery and concluded that, without an expert, Autery would be unable to prove causation.

The parties agree that Louisiana law applies to this diversity case. Louisiana law requires that a plaintiff suing under a products liability theory prove causation. *See, e.g., Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 260-61 (5th Cir. 2002). "Causation" in a pharmaceutical liability case involves both "general causation" and "specific causation." *Wells v. Smithkline Beecham Corp.*, 601 F.3d 375, 377-78 (5th Cir. 2010). "General causation is whether a substance is capable of causing a particular injury or condition in the general population, while specific causation is whether a substance caused a particular individual's injury." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 351 (5th Cir. 2007) (citation and quotation marks omitted). Here, the district court concluded that

even if Autery could prove general causation, *i.e.*, that abrupt discontinuation of Paxil causes suicide, he could not substantiate a claim of specific causation, *i.e.*, that Paxil (or a failure to warn of danger associated with withdrawal from Paxil) caused Chris's death.

The record reveals that Chris's doctor, Dr. Atwi, indicated that it appeared that Paxil was well-tolerated by Chris. Dr. Atwi testified that he discussed the warnings he was receiving regarding potential increased suicide ideation in adolescents taking Paxil with Chris's mother who decided to keep him on Paxil because it appeared to be working. In the evidence before the district court, neither Dr. Atwi, the prescribing physician, nor Cindy Hayes, Chris's treating psychologist, testified that Paxil, a lack of warnings, or Paxil's discontinuation caused or contributed to Chris's death. Despite knowing that he would have to have expert testimony to support his theory of GSK's liability for Chris's death, Autery never retained or identified a medical causation expert or proffered any expert testimony supporting specific causation to the district court.

On appeal, Autery raises four issues: (1) whether the district court erred in refusing to grant an extension of time to file "a memorandum and supporting documents" objecting to the magistrate judge's recommendation that summary judgment be granted; (2) whether summary judgment was improperly granted before discovery could be completed; (3) whether the district court erred in failing to grant a continuance of the expert report deadline or a reset of the scheduling order; and (4) whether due process was violated when the district court "preemptively den[ied a] court-appointed expert when expert testimony is an essential element in this case?" Autery does not directly challenge the grant of summary judgment or support an argument that he met his summary judgment burden to provide some expert evidence in support of specific causation.

No. 11-30589

The first three issues all fall under a category of requesting additional time for briefing and discovery. We review a district court's decisions on such matters under an abuse of discretion standard. *See, e.g., Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 721 (5th Cir. 1995). Autery fails to point to any discovery from GSK that would have assisted him in proving specific causation. Nor do we see anything that additional time would do to cause Autery to procure an expert that did not occur in the six years this matter was pending in the district court. There may be cases where unreasonably short deadlines prevent adequate discovery and obtaining of evidence; this case is not one of them—far from it. We conclude that the district court did not abuse its discretion in denying the various extensions Autery references, and we resolve the first three issues against him.

In his final issue, Autery seeks for the first time on appeal to raise a constitutional due process argument to the effect, apparently, that a district court is required *sua sponte* to appoint (and use government funds to pay for) an expert for a plaintiff in an ordinary civil tort lawsuit. At best for Autery, plain error review would apply to this unpreserved argument. *See Crawford v. Falcon Drilling Co.*, 131 F.3d 1120, 1123 (5th Cir. 1997) (applying plain-error review to unpreserved error in a civil case). He points to no case providing for such a "right to experts" in a case like this one.[1] As such, any imagined error could not conceivably be called "plain." We resolve the fourth issue against Autery.

We recognize the difficulty of a grieving father's quest to find answers to the cause of a tragic circumstance while incarcerated. However, the

---

[1] Autery cites an Eighth Circuit case to support his argument that he is entitled to the appointment of an expert. *Smith v. Jenkins*, 919 F.2d 90 (8th Cir. 1990). That case addressed the possibility of appointing experts under Federal Rule of Evidence 706 in a case where an inmate claimed a violation of his Eighth Amendment rights due to deliberately indifferent medical care. *Id.* at 92. The case falls far short of suggesting that appointment of experts is required *sua sponte* in a non-civil rights tort suit such as this one.

No. 11-30589

commendable and thorough efforts of the magistrate and district judges gave Autery a full opportunity to respond appropriately to GSK's summary judgment, yet he failed to do so.

AFFIRMED.