# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-20603

United States Court of Appeals
Fifth Circuit

**FILED**
June 4, 2015

Lyle W. Cayce
Clerk

DEVEREAUX MACY; JOEL SANTOS,

      Plaintiffs - Appellants

v.

WHIRLPOOL CORPORATION, doing business as Kitchenaid,

      Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:10-CV-1861

Before WIENER, SOUTHWICK, and GRAVES, Circuit Judges.

PER CURIAM:*

In this products liability suit filed by Plaintiffs-Appellants Devereaux Macy and Joel Santos (collectively, "Plaintiffs"), the district court (1) struck Plaintiffs' expert reports for failure to comply with Federal Rule of Evidence 702; and (2) granted the motion for summary judgment filed by Defendant-Appellee Whirlpool Corporation ("Whirlpool"). We affirm.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-20603

## I. Facts & Proceedings

In April 2008, Ms. Macy purchased and moved into a residence located in the Woodlands, Texas. Mr. Santos, whom she referred to as her boyfriend, moved in with her at the same time. The residence was equipped with a KitchenAid gas range which had been designed and manufactured by Whirlpool, doing business as KitchenAid. The individuals from whom she purchased the residence had used the gas range without incident for approximately eight years. Ms. Macy had used the gas range for about four months, when, on July 23, 2008, she phoned Center Point Energy, complaining of fatigue and dizziness—symptoms consistent with carbon monoxide poisoning. That same day, a Center Point Energy service representative, Mr. Holmes, visited Ms. Macy's residence and identified the gas range as the culprit.[1] He "red-tagged" the range and turned off the gas valve. The range was removed from the kitchen and stored in Ms. Macy's garage. Ms. Macy and Mr. Santos reported to the hospital the next day; her carboxyhemoglobin (COHb) blood level was 0.8%, which is a normal reading for non-smokers.[2]

Plaintiffs filed a products liability lawsuit in Harris County District Court, Texas, naming Whirlpool, Sears, Roebuck and Company ("Sears"), and the individual sellers from whom Ms. Macy had purchased the residence as defendants. After the individual sellers were dismissed from the lawsuit at Plaintiffs' request, Whirlpool removed the case to the district court on the basis of complete diversity.[3] Approximately three years later, in May 2013, Plaintiffs filed a motion for partial summary judgment. Two months later,

---

[1] Mr. Holmes testified that he inserted a probe into the oven while it was running and recorded a 2,000 ppm carbon monoxide reading. He did not perform any tests of the air inside the house.

[2] Mr. Santos's COHb blood level was 1.7%, which falls within the normal range for a non-smoker.

[3] Sears was dismissed by joint oral motion of both parties.

No. 14-20603

Whirlpool filed a motion to exclude Plaintiffs' experts, Paul Carper and Dr. David Penney.  They also filed a motion for summary judgment, claiming that the evidence demonstrated that when operated as intended, the gas range met all industry standards and was not defective.  The district court eventually struck Plaintiffs' expert reports and granted Whirlpool's motion for summary judgment on the basis that Plaintiffs had failed to adduce any evidence that (1) the symptoms they suffered were caused by carbon monoxide poisoning or (2) the gas range produced amounts of carbon monoxide in excess of applicable industry standards.  Plaintiffs timely appealed both rulings.

## II. Analysis

**A.    Expert testimony**

Plaintiffs contend that the district court abused its discretion in striking the experts reports prepared by Dr. Penney and Mr. Carper.  We review the exclusion of expert testimony for abuse of discretion,[4] and we will not overturn such a decision unless it is "manifestly erroneous."[5]  A manifest error is one "that is plain and indisputable, and that amounts to a complete disregard of the controlling law."[6]  If a trial court excludes evidence essential to maintain a cause of action, the propriety of summary judgment depends entirely on the evidentiary ruling.[7]

---

[4] *Brown v. Ill. Cent. R.R. Co.*, 705 F.3d 531, 535 (5th Cir. 2013) (citation omitted); *see Knight v. Kirby Inland Marine, Inc.*, 482 F.3d 347, 354 (5th Cir. 2007) ("[A] district court has broad discretion to determine whether a body of evidence relied upon by an expert is sufficient to support that expert's opinion.").

[5] *United States v. Wen Chyu Liu*, 716 F.3d 159, 167 (5th Cir. 2013) (citation and internal quotation marks omitted); *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 143 (1997) ("In applying an overly 'stringent' review to that [exclusion], [the appellate court] failed to give the trial court the deference that is the hallmark of abuse-of-discretion review." (citation omitted)).

[6] *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004) (citation and internal quotation marks omitted).

[7] *Allen v. Penn. Eng'g Corp.*, 102 F.3d 194, 196 (5th Cir. 1996) (citation omitted).

No. 14-20603

Federal Rule of Evidence 702 states that an expert witness "who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if":

> (1) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (2) the testimony is based upon sufficient facts or data; (3) the testimony is the product of reliable principles and methods; and (4) the witness has applied the principles and methods reliably to the facts of the case.[8]

Rule 702 embodies the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, which emphasizes the trial courts' role as "gatekeepers" to ensure that proffered expert testimony is "not only relevant, but reliable."[9] "The reliability prong mandates that expert opinion 'be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief.'"[10]  "The relevance prong requires that the proponent demonstrate that the expert's 'reasoning or methodology can be properly applied to the facts in issue.'"[11]

### 1.    Dr. Penney

Dr. Penney's report expresses the following opinions: (1) Regarding general causation, low-level exposure to carbon monoxide can cause serious neurological damages of the type that Ms. Macy and Mr. Santos complain; and

---

[8] FED. R. EVID. 702.

[9] *See Brown*, 705 F.3d at 535 (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993)).

[10] *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (citation omitted). When assessing reliability, courts consider the following non-exclusive list of factors: (1) whether the theory or technique has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the method used and the existence and maintenance of standards controlling the technique's operation; and (4) whether the theory or method has been generally accepted by the scientific community. *Id.* (citation and internal quotation marks omitted).

[11] *Id.* (citation omitted).

No. 14-20603

(2) Regarding specific causation, Ms. Macy's and Mr. Santos's injuries were caused by the gas range.

We first consider whether the district court erred in striking Dr. Penney's general causation conclusion. If we conclude that the district court correctly excluded the general causation opinion, we need not proceed to specific causation.[12]

The district court stated that it struck Dr. Penney's general causation opinion because "[h]is only evidence for this conclusion is that he says that the World Health Organization has adopted his [6.5 ppm] standard." This observation by the court is inaccurate. Our review of Dr. Penney's expert report reflects that he relied on scientific literature, some of which he authored, to support his general causation opinion: (1) An article he prepared for the World Health Organization ("WHO") indicating that the upper limit for carbon monoxide over a 24 hour period should be set at 6.5 ppm; (2) two studies, one of which he authored, demonstrating that relatively low-level carbon monoxide exposure over an extended period of time can lead to serious health effects; and, (3) three studies prepared by other individuals indicating that COHb measurements are not an accurate metric for carbon monoxide poisoning. Although Dr. Penney did rely on more than just his one article published in the WHO compilation, as indicated by the district court, our review of the cited studies compels the conclusion that the district court did not abuse its discretion in striking Dr. Penney's opinion on general causation.[13]

As an initial matter, the three studies that address the viability of relying on COHb measurements to determine carbon monoxide poisoning do

---

[12] *See Knight*, 482 F.3d at 352 (citing *Miller v. Pfizer, Inc.*, 356 F.3d 1326, 1329 (10th Cir. 2004)).

[13] Dr. Penney did not attach any of the studies to his expert report. Neither are they contained elsewhere in the record. We rely on Dr. Penney's summations of the studies in his expert report.

not appear to assess the relationship between low-level carbon monoxide exposure and the symptoms reported by Ms. Macy and Mr. Santos. Rather, they provide only an "inferential starting point for doing so," and a district court may permissibly conclude that such studies do not support an expert's conclusion.[14]

The two case series studies that Dr. Penney claimed address the relationship between low levels of carbon monoxide exposure and serious health effects do not present facts analogous to those presented by this case because the majority of the studies' subjects were exposed to much higher levels of carbon monoxide and for longer periods of time than those at issue here. In Dr. Penney's study, which appeared in a book that he edited, 43 non-smokers were exposed to carbon monoxide for a mean average of 27.5 months in amounts between 24.2 and 150.5 ppm.[15] The second study, which appeared in that same book, addressed 21 individuals who were chronically exposed to carbon monoxide in amounts between 123.0 and 123.6 ppm. Because the highest reading recorded during Mr. Carper's testing conducted at Ms. Macy's residence was 42.6 ppm,[16] which occurred at the conclusion of a six-hour period in which the gas range was running continuously with the residence's air-conditioning turned off, both studies lack relevance to this case—or, at least, Dr. Penney's expert report does not adequately explain their relevance to his conclusion.

---

[14] *See LeBlanc ex rel. Estate of LeBlanc v. Chevron USA, Inc.*, 396 F. App'x 94, 99 (5th Cir. 2010) (per curiam) (citing *Knight*, 482 F.3d at 353).

[15] *See* David G. Penney, *Chronic Carbon Monoxide Poisoning: A Case Series*, in CARBON MONOXIDE POISONING 551, 552-53 (David G. Penney ed. 2008).

[16] As later discussed, we hold that the district court properly excluded Mr. Carper's opinion because he is not qualified to render an opinion as to whether the gas range complied with the American National Standards Institute ("ANSI") Z21.1 standard. Assuming that the results of Mr. Carper's field test of the gas range were admissible, the studies cited by Dr. Penney do not present analogous facts because they involve much higher concentrations of carbon monoxide and for significantly longer periods.

No. 14-20603

Finally, there is the article that was published by the European Office for the WHO, in which Dr. Penney proposes a 6.5 ppm guideline. As the district court observed, this is a recommended standard that has not been adopted by any domestic agency and that the WHO did not endorse.[17] Moreover, that standard is irrelevant to the question whether low-level carbon monoxide exposure causes the type of alleged injuries at issue in this case.

Mindful that under *Daubert* and Federal Rule of Evidence 702, a district court has broad discretion to determine whether a body of evidence relied on by an expert is sufficient to support that expert's opinion, we conclude that the district court did not abuse its discretion in striking Dr. Penney's general causation opinion.[18] We do not suggest that an expert must support his opinion with published studies that "unequivocally support" his conclusions.[19] Nevertheless, an expert's testimony must be reliable at every step, including the methodology employed, the facts underlying the expert's opinion, and the link between the facts and the conclusion.[20] The district court did not abuse its discretion in concluding that Dr. Penney's proffered expert opinion on general causation failed this test.[21]

### 2.    Mr. Carper

The district court struck Mr. Carper's expert report on the ground that he was not qualified to render an opinion on whether the range was defectively

---

[17] "The views expressed by authors, editors, or expert groups do not necessarily represent the decisions or the stated policy of the World Health Organization."

[18] *See Knight*, 482 F.3d at 354. Moreover, we may affirm a district court's exclusion of evidence on any ground supported by the record. *See MCI Commc'ns Servs., Inc. v. Hagan*, 641 F.3d 112, 117 (5th Cir. 2011).

[19] *See Knight*, 482 F.3d at 354 (citation omitted).

[20] *Id.* at 354-55.

[21] *See Joiner*, 522 U.S. at 146 ("A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." (citation omitted)); *see also id.* ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.").

designed because it failed to comply with the applicable American National Standards Institute ("ANSI") Z21.1 standard for gas ranges. We agree. Although Rule 702 does not require that an expert must be "highly qualified," at the end of the day, the district court must be assured that a witness is qualified to testify by virtue of his "knowledge, skill, experience, training, or education."[22] Our review of Mr. Carper's qualifications satisfies us that the district court did not abuse its discretion in determining that he does not meet this threshold.

Mr. Carper is an accomplished engineer with significant expertise in vehicular accident reconstruction and fire and explosion analysis; however, he has no significant experience or training that relates to carbon monoxide monitoring or defective gas appliances. Out of thirty-seven separate listings related to his qualifications on his five-page curriculum vitae, only one tangentially relates to the allegedly defective gas range in this case: a presentation on "gas systems and the investigation of gas appliance fires." No gas appliance fire is at issue in this case; rather, the core claim here is that the gas range was defective because it emitted carbon monoxide in excess of an amount that is safe. We require that a "'witness's qualifying training or experience, and resultant specialized knowledge, are *sufficiently related* to the issues and evidence before the trier of fact [such] that the witness's proposed testimony will help the trier of fact."[23] Mr. Carper's qualifications, while impressive, are not sufficiently relevant to the instant issues and evidence to

---

[22] *See* FED. R. EVID. 702.
[23] *See Wen Chyu Liu*, 716 F.3d at 167 (emphasis supplied) (citation and internal quotation marks omitted).

No. 14-20603

make his proposed testimony probative.[24]   For these reasons we affirm the district court's striking of Mr. Carper's opinion.

## B.    Summary judgment

Plaintiffs' contention that the district court erred in granting summary judgment relies on the evidence that we have just ruled was properly excluded by the district court.   Accordingly, we affirm the district court's judgment in Whirlpool's favor, dismissing Plaintiffs' action with prejudice.[25]

## III. Conclusion

The judgment of the district court, and all rulings related to it, are AFFIRMED.

---

[24] Moreover, even were Mr. Carper qualified, the record indicates that his field testing of the gas range did not comply with the ANSI Z21.1 protocol, rendering his opinion that the gas range did not comply with ANSI Z21.1 the product of unreliable methodology.

[25] *See, e.g., Wells v. SmithKline Beecham Corp.*, 601 F.3d 375, 381 (5th Cir. 2010).