NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**NOBELBIZ, INC.**
*Plaintiff-Appellee*

**v.**

**GLOBAL CONNECT, L.L.C., T C N, INC.,**
*Defendants-Appellants*

---

2016-1104, 2016-1105

---

Appeals from the United States District Court for the Eastern District of Texas in Nos. 6:12-cv-00244-RWS, 6:12-cv-00247-RWS, 6:13-cv-00804-MHS, and 6:13-cv-00805-MHS, Judge Robert Schroeder, III, Judge Michael H. Schneider.

---

Decided: July 19, 2017

---

RALPH A. DENGLER, Venable LLP, New York, NY, argued for plaintiff-appellee. Also represented by GIANNA CRICCO-LIZZA; MEGAN S. WOODWORTH, Washington, DC; WILLIAM A. HECTOR, San Francisco, CA.

CLINTON EARL DUKE, Durham Jones & Pinegar, Salt Lake City, UT, argued for defendants-appellants. Also represented by LYNDON BRADSHAW.

———————————

Before NEWMAN, DYK, and HUGHES, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* HUGHES.

Dissenting opinion filed by *Circuit Judge* NEWMAN.

HUGHES, *Circuit Judge*.

Global Connect, L.L.C. and T C N, Inc. (collectively, the Defendants) appeal from a jury verdict finding they infringed U.S. Patent Nos. 8,135,122 and 8,565,399. Because the district court erred in its claim construction, we reverse and remand.

I

NobelBiz sued the Defendants in the Eastern District of Texas alleging infringement of the '122 and '399 patents. Both patents are titled "System and method for modifying communication information (MCI)" and have identical specifications. J.A. 382, 391. The patents relate to "a method for processing a communication between a first party and a second party." '122 patent col. 1 ll. 52–53. When a call originator contacts a call target, the system modifies the caller ID data "to provide a callback number or other contact information . . . that may be closer to or local to the Target." '122 patent col. 1 ll. 44–46. The first claim of each patent is reproduced below with the disputed claim language emphasized.

Claim 1 of the '122 patent reads:

1. A system for processing an outbound call from a call originator to a call target, the system comprising:

a database storing a plurality of outgoing telephone numbers;

an information processor controlled by the call originator and configured to process a trigger comprising a telephone number of the call target;

access the database and select a replacement telephone number from the plurality of outgoing telephone numbers based on at least an area code of the telephone number of the call target;

*modify caller identification data of the call originator to the selected replacement telephone number*, the selected replacement telephone number having at least an area code the same as an area code of the telephone number of the call target; and

transmit the modified caller information data of the call originator to the call target.

'122 patent col. 5 ll. 4–21.

Claim 1 of the '399 patent reads:

1. A system for handling an outbound call from a call originator to a call target, the system comprising:

a database storing a plurality of outgoing telephone numbers, each outgoing telephone number having one of two or more area codes; and

an information processor controlled by the call originator and configured to:

a) process a trigger comprising at least an area code of a telephone number of the call target;

b) select from the database a telephone number from the plurality of outgoing telephone numbers where the selected telephone number has at least an area code the same as the area code of the telephone number of the call target;

   c) set caller identification data of the *outbound call* to the selected telephone number; and

   d) transmit the caller identification data to the call target in connection with the *outbound call*.

'399 patent col. 5 ll. 5–23.

The parties asked the district court to construe several claim terms, including "modify caller identification data of the call originator to the selected replacement telephone number," "replacement telephone number," and "outbound call." For "replacement telephone number," NobelBiz requested the construction: "A number other than the call originator system telephone number. J.A. 10. The Defendants requested the construction: "A telephone number different from the original telephone number in the caller ID data that is substituted in place of the original telephone number in the caller ID data." *Id.* For the "modify caller identification data" term, NobelBiz argued that no construction was needed, while the Defendants requested the construction: "Chang[ing] the caller ID data by replacing the original telephone number in the caller ID data with the selected 'replacement telephone number.'" J.A. 14. For "outbound call," NobelBiz argued that no construction was needed, while the Defendants requested the construction: "A call after it has been originated and sent." J.A. 68.

After briefing and oral argument, the district court found that all three terms should be given their plain and ordinary meanings. During the jury trial, experts on both sides testified about the meaning of these terms, consistent with their positions during claim construction.

After trial, the jury found the asserted claims infringed. The Defendants filed renewed motions for judgment as a matter of law and, in the alternative, for a new trial. The district court denied the motions, and the

Defendants appeal.  We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## II

The Defendants argue that the district court erred in its claim construction by holding that "replacement telephone number," "modify caller identification data of the call originator" and "outbound call" all have their plain and ordinary meaning.  We review claim constructions based on intrinsic evidence de novo.  *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S.Ct. 831, 841 (2015).

## A

Each independent claim of the '122 patent requires "modifying caller identification data to the selected replacement telephone number." '122 patent col. 5 ll. 15–16; *see also* col. 5 ll. 47–49 and col. 6 ll. 30–31 ("modifying caller identification data of the call originator to the selected replacement telephone number.").  During claim construction, the parties presented a clear dispute regarding the proper scope of the claims.  Nevertheless, the district court concluded that because "the term is not ambiguous and will easily be understood by a jury, plain and ordinary meaning will prevail." J.A. 13.  During trial, the parties' experts testified about the meaning of the claims, ultimately leaving claim construction issues to the jury.  NobelBiz's expert argued the claim only requires modifying caller identification data to a selected telephone number, and so no original telephone number is necessary.  J.A. 9375 at 22:6–19.  The Defendants' expert asserted that the claim requires changing caller identification data by replacing an original phone number with the replacement telephone number.  *See id.*  Allowing the experts to make arguments to the jury about claim scope was erroneous.

The district court had the responsibility to determine the scope of the asserted claims, and "[a] determination

that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008). In *O2 Micro*, the district court concluded that the disputed claim term had a "well-understood definition" even though "the parties dispute[d] the scope of that claim term, each party providing an argument identifying the alleged circumstances when the requirement specified by the claim term must be satisfied." *Id.* On appeal, we found that "[b]y failing to construe th[e] term, the district court left the jury free to consider these arguments." *Id.* at 1362. The same error occurred here. The district court must provide a construction because "the parties disputed not the *meaning* of the words themselves, but the *scope* that should be encompassed by th[e] claim language." *Id.* at 1361 (emphasis in original).[1]

We turn now to the proper scope of the claims based on the intrinsic record. Looking first to the claim language, the caller identification data is *modified* to the *replacement* telephone number. The word "replacement" indicates the replacement telephone number must actually *replace* something. In the context of the claim, what is being replaced is an original phone number. The word "modify" also indicates that there must have been original

---

1    Contrary to the dissent's characterization, this is not merely a factual question of infringement. In our claim construction, we do not examine the Defendants' system, but focus on the intrinsic record: the claims, the specification, and the prosecution history. The scope of patent claims will always affect infringement, but the meaning of the claim language remains a legal issue to be determined by the judge, not the jury.

caller identification data (in this context, a telephone number) that is now being *modified.* The patent specification does not discuss this claim language, and therefore we see no reason to depart from this straightforward reading of the claim.

The prosecution history further supports this interpretation of the claims. The relevant limitation, as drafted in the original application, required the information processor to: "select one of the plurality of outgoing telephone numbers having at least an area code the same as an area code of the telephone number of the call target." *See* J.A. 480–81. The Examiner narrowed the claims to instead read:

> select a *replacement telephone number* from the plurality of outgoing telephone numbers based on an at least an area code of the telephone number of the call target; *modify caller identification data of the call originator to the selected replacement telephone number*, the selected replacement telephone number having at least an area code the same as the area code of the telephone number of the call target.

*See id.* The addition of the words "replacement telephone number" and "modify caller identification data" support our conclusion that the claims require the caller identification data to be modified from an original phone number to a replacement phone number. Therefore, we construe "replacement telephone number" to mean "a telephone number that substitutes for an original telephone number," and "modify caller identification data" to mean "change caller identification data."

## B

The Defendants also appeal the district court's construction of "outbound call." Each independent claim of the '399 patent requires the system, computer, or method

to "transmit the caller identification data to the call target in connection with the outbound call." '399 patent col. 5 ll. 22–23; *see also* col 5 ll. 61–62 and col. 6 ll. 42–43 ("transmitting the caller identification data to the call target in connection with the outbound call."). The district court construed "outbound call" to have its plain and ordinary meaning. Again the district court erred under *O2 Micro* by failing to construe the claim term. The parties disagree about whether the "outbound call" must be a call that is already extant. The Defendants argue that the patent describes a "catch-and-release" system: the system operates on a call that has already been originated, and then releases the call with new caller identification information to the target. We agree.

First, requiring that the call be extant gives meaning to the word "outbound" in "outbound call." Otherwise, the claims could simply require transmitting the caller identification data in connection with the call, rather than the *outbound* call. Second, the specification supports the conclusion that the system acts on an already extant call: the Abstract specifies "[a] system for handling an outbound call from a call originator to a call target," J.A. 391; the summary of the invention describes how "a communication is received from the first party" before the system acts on it, '399 patent col. 1 ll. 52–61; and Figures 1–4 show the system acting on a call that has already been originated, J.A. 393–96.

NobelBiz argues that requiring an extant call reads out embodiments disclosed in the specification:

> In one aspect, the system and method of the present disclosure may operate within or may be connected to Carrier Network 130. In other aspects, the system and method may operate in Originator's 100 PBX (e.g. corporate phone system, predictive dialer, call distribution system) or may be attached to or embedded within Origina-

>tor's 100 communication device (e.g. telephone, VoIP phone, VoIP soft phone).

'399 patent col. 2 ll. 56–62. We are not persuaded. NobelBiz fails to show why a PBX or communication device cannot operate on an extant call. The intrinsic evidence better supports the Defendants' proposed construction, and we therefore construe "outbound call" as a "call placed by an originator to a target."

### III

Because the district court erred in its claim construction, we do not reach the remainder of the issues on appeal. Therefore, we reverse the district court's claim construction, vacate the judgment, and remand for a new trial. On remand the district court may entertain a summary judgment motion of non-infringement.

**REVERSED AND REMANDED**

COSTS

Costs to Appellants.

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**NOBELBIZ, INC.,**
*Plaintiff-Appellee*

**v.**

**GLOBAL CONNECT, L.L.C., T C N, INC.,**
*Defendants-Appellants*

---

2016-1104, 2016-1105

---

Appeals from the United States District Court for the Eastern District of Texas in Nos. 6:12-cv-00244-RWS, 6:12-cv-00247-RWS, 6:13-cv-00804-MHS, and 6:13-cv-00805-MHS, Judge Robert Schroeder, III, Judge Michael H. Schneider.

---

NEWMAN, *Circuit Judge,* dissenting.

The district court gave several claim terms their plain and ordinary meaning. These terms are not scientific or technologic terms and they do not have a special meaning in the subject technology. They are words that are readily understood by judge and jury, and are used in the claims according to their plain and ordinary meaning. The trivial changes made by the panel majority do not warrant the new trial that is ordered; nor does the action of

the district court in giving the overall question of infringement to the jury.  I respectfully dissent.

A

It is not reversible error for the district court to decline to "construe" terms that have a plain and ordinary meaning as used in the patent.  See *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1291 (Fed. Cir. 2015) ("[E]ach [term] is used in common parlance and has no special meaning in the art.  Because the plain and ordinary meaning of the disputed claim language is clear, the district court did not err by declining to construe the claim term.").

The panel majority holds that the term "replacement telephone number" should be construed as "a telephone number that substitutes for an original telephone number," Maj. Op. at 7; the term "modify caller identification data" should be construed as "change caller identification data," *id.*; and the term "outbound call" in the clause "transmit the caller identification data to the call target in connection with the outbound call" should be construed as "a call placed by an originator to a target," *id.* at 9.  We are not told how these corrected definitions could have changed the result at trial.

There is no obligation for a district court to construe straightforward terms whose meaning and scope are readily understood.  *Summit 6*, 802 F.3d at 1291.  Infringement in this case is not a product of arcane claim language.  *See, e.g.*, *Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*, 628 F.3d 1359, 1376 (Fed. Cir. 2010) ("This court agrees with the Defendants that the parties' dispute concerns factual questions relating to the test for infringement and not the legal inquiry of the appropriate scope of the 'positional accuracy' limitation.").

As the district court recognized, the heart of the parties' disagreement is whether the claims are infringed by

the Defendants' system, which is not a "catch and release system" where the call is captured after origination (i.e., dialing) and the Caller ID modified before the call is released.[1] The Figures in the specification show "catch and release" capture after the call is dialed, while the specification states that the claimed system may alternatively operate in an origination device, before the call is sent. '122 Patent, col. 2, ll. 58–62 ("The system and method . . . may be attached to or embedded within Originator's [] communication device.").

The issue of infringement thus did not turn on a disputed technical meaning of any claim term, but on whether the claims are infringed by systems in which a web-dialer originates calls with modified Caller-ID data, as opposed to a catch-and-release system whereby calls are intercepted after origination and modified. Each of the claim construction arguments raised by Appellants is, at bottom, a question of whether the claims should be limited to a "catch-and-release" system. The district court appropriately submitted to the jury the factual infringement question of whether the accused systems, in which there is no capture of a pre-dialed call, are within the literal or equivalent scope of the claimed method and system.

I do not perceive reversible error in submitting the infringement question to the jury in this case. *See Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*, 425 F.3d 1366, 1377 (Fed. Cir. 2005) ("Because the claim language does not require a particular form of testing, this inquiry is not a claim construction question, which this court reviews de novo. Rather, this court reviews this

---

[1] *NobelBiz, Inc. v. Glob. Connect, L.L.C.*, No. 612CV244MHSLEAD, 2014 WL 4626291, at *8 (E.D. Tex. Sept. 15, 2014) (Dist. Ct. Op.).

inquiry as a question of fact."), *overruled on other grounds by Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 576 F.3d 1348 (Fed. Cir. 2009).

B

The decision of this case invokes the tension between deciding factual questions of infringement and converting such factual aspects into legal issues of claim construction. *See Function Media, L.L.C. v. Google, Inc.*, 708 F.3d 1310, 1326 (Fed. Cir. 2013) (comparing dispute over the "scope of the claims" and "post-trial attempts to recharacterize improper arguments as issues of claim construction."). *See generally GPNE Corp. v. Apple Inc.*, 830 F.3d 1365, 1373 (Fed. Cir. 2016) ("At bottom, then, GPNE's complaint rests not with the district court's failure to define claim scope, but with its allowing Apple to make certain arguments to the jury.").

The district court declined to decide the question of infringement by way of claim construction. The court stated that "the Court is not persuaded that it should limit the independent claims to Defendants' 'catch and release' construction given the intrinsic evidence," Dist. Ct. Op at *8, and allowed the question of infringement to be presented to the jury. I do not discern reversible error in this procedure. *See, e.g., Verizon Servs. Corp. v. Cox Fibernet Virginia, Inc.*, 602 F.3d 1325, 1334 (Fed. Cir. 2010) ("While Verizon attempts to characterize the issue as one of claim construction, its argument is more accurately about whether Cox's arguments to the jury about the distinction between how its system works and the Internet were improper . . . .").

There was a full jury trial, with witnesses on both sides explaining the claims, and pointing out the similarities and differences between the patented system and the accused systems. Absent some error of law in the instructions to the jury, or failure of evidence such that due process is not obtained, I do not discern reversible error in

the procedure that the district court chose. There is no reason to believe that a reasonable jury would not understand the technology and the issues.

"The difficulty presented in this appeal is how to separate the role of the jury to find facts . . . from the role of trial judges in reaching, or for us freely reviewing, the ultimate legal conclusion . . ." *McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1359 (Fed. Cir. 2001) (Michel, J., dissenting) (observing this "difficulty" in the obviousness context). When such "difficulty" arises, the nature and complexity of the particular technology may be relevant, as well as the issues of fact, and application of law to fact, that require resolution.

When the district court has reasonably adopted trial procedures that accord with the principles of due process and the role of the jury, appropriate deference is warranted. *Newell Companies, Inc. v. Kenney Mfg. Co.*, 864 F.2d 757, 765 (Fed. Cir. 1988) ("Trials must be fair, not perfect.").

## C

In cases where the question of "claim scope" is directly congruent to the ultimate question of infringement, and the claim terms do not have a disputed or complex technical meaning, it was not reversible error for the trial judge to refer the question of infringement to the jury. The jury is well suited to evaluate the disclosure and to compare the claimed technology with the accused system, including weighing the views of the dueling expert witnesses. *See Lavender v. Kurn*, 327 U.S. 645, 653 (1946) ("[T]he appellate court's function is exhausted when that evidentiary basis [of the jury's verdict] becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable.").

When the district court, in its measured judgment, refers the question of infringement to the jury, with no evidentiary flaws in the trial proceedings, it is not the appellate role to require that the trial be repeated. Conversely, if the majority indeed believes that on the correct view of the claims there cannot be infringement, our appellate role is to reverse the judgment, not remand for a new trial.